## MAY, ET AL. v. ROBERTSON.

1. When the sureties of a constable, suffer him to act under a bond to which their names have been signed without objection, the jury is authorized to infer a waiver by them of any previous demand of additional sureties, before it was to be binding on them, and their consent to be bound by it as it stands.

Writ of Error to the Circuit Court of Talladega. Before the Hon. S. Chapman.

THIS suit was commenced by motion before a justice of the peace, by Robertson against May as a constable, and against Coker, Best and Spence as his official sureties. The default alledged, is the failure to return a certain writ of execution described in the notice. After judgment against

them, the defendants appealed to the circuit court, where they pleaded as follows:

1. Coker, Best and Spence denied all the allegations of the motion. 2. Best and Spence asserted that when the execution was placed in May's hands, he was directed to return it or retain it, at his discretion. 3. By all the sureties, that the bond was delivered to one Cotton, clerk of the county court, with the distinct agreement that the same was an *escrow*, and to become valid as a deed only upon condition that one Curry and one Elston should execute it as sureties also; that Curry and Elston never signed the same, so it is not the deed, &c. At the trial, the defendants asked to be allowed to withdraw all defence as to Coker, and to file separate pleas for Best and Spence, in all respects similar to those previously pleaded. The court refused, and held the defendants to the issues already made. The plaintiff then proved that the execution was not returned until the 20th December, 1845—its return day being the 22d September, 1845. That May acted as constable from the date of the bond aforementioned, and lived in the same beat with Best, and within a few miles from Spence and Coker, and that the signatures of all the sureties to the bond were genuine. The bond is dated the 22d April, 1844, and purports to bind May, Coker, Best and Spence, for the performance by May of the duties of constable, and is approved by the judge of the county court.

The evidence for the defendants tended to show the parties signed the bond as an *escrow*, and left it with the county clerk, to be operative on condition that Elston and Curry should execute it as co-sureties; but the clerk did not communicate this to the judge of the county court. Elston and Coker did not execute the bond, but the clerk handed it with other bonds to the judge for his approval, and he approved it. In the summer of 1844 or 1845, Best came to the clerk's office and asked the clerk if Elston and Curry had signed the bond, and objected to being bound by it without their signatures. No other persons were present than Best and the clerk. It also appeared in evidence, that in 1845 the justice issuing the execution held his court monthly, on the fourth

Saturday of each month, in pursuance of an act approved 5th February, 1840. Said execution was not returnable to any of the monthly terms. The defendants objected to the execution as void, but the court allowed it to be read to the jury. On this state of proof the court charged the jury—

1. That although the execution was not returnable to the regular monthly term of the court, and therefore was irregular, yet the constable can take no advantage of it—that he was bound to return it according to its mandate—that the defendant in the execution might have moved to quash it, but the officer had no such right, nor had he any to disregard it.

2. That although the bond was originally delivered as an *escrow*, yet if the sureties subsequently supposed May to act under the bond, it authorized the inference they had waived their demand of additional sureties, and had consented to be bound by it as it stood. It would be a fraud on the public to permit them to lie by for such a length of time, and suffer him to act without objection on a bond which the public had no means of knowing was deficient. That it was their duty to make their objection to the judge of the county court, or in such mode as would warn the public that May was acting without a valid bond, and that such objection made to the clerk of the county court would not avail them, the public not knowing of the objection.

The defendants excepted to the several rulings of the court, and they are now assigned as error.

Morgan, for the plaintiff in error, insisted—1. The execution, by the act of 1840, (acts, 137) is void, and therefore the constable was in no default in not returning it. Holloway v. Johnson, 7 Ala. Rep. 660.

2. The defendant Coker had the right at any time to withdraw his defence, and the other parties should have been allowed to plead anew.

S. F. Rice, for the defendant in error, cited the previous decision of this case, 11 Ala. 466.

COLLIER, C. J.—We cannot perceive that the defend-

ants could have been prejudiced by the refusal to permit one of them to withdraw his pleas. But conceding that one of several defendants has the right to abandon his defence, it is clear that an application for the others to replead is a matter within the discretion of the court; and its refusal is not revisable on error.

The act of 1840 " relative to justices courts, and for other purposes, in certain counties therein named," enacts that the courts of justices of the peace in Talladega and other counties, shall be holden regularly once a month, and at no other time, except to hear and determine rules against constables. *Further*, that all processes issued by a justice of the peace, which is not returnable to some superior court of law or equity, shall be returnable at a regular term of holding the justice's court; "otherwise the same shall be utterly void: nevertheless, should any suit be instituted in any of said courts within five days preceding the time of holding said court, the same shall be made returnable to the second term of the court after the issuance thereof."

It is also provided by the act that justices' courts and constables' sales shall be held at the muster ground in the several beats, unless there is no building, or from other cause it is manifestly inconvenient; in such case the justices and constable may designate some other place within the beat, which may be most proper. And constables' sales shall be holden at the time and place of holding justices' courts in the beat, unless the property levied on be of such a description as makes its removal inconvenient. Pamp. acts of 1839 and '40, p. 137.

The statute of 1814, directs justices of the peace to issue execution against the person or goods and chattels of the party against whom judgment is so entered, for the debt and costs, or costs alone, returnable at a certain time and place therein mentioned, not less than twenty, nor more than thirty days from the time of issuing the same. Clay's Dig. 358, § 1. By the act of 1822, it is provided that justices of the peace may issue executions to any county in the State against the property of a defendant in a judgment, which shall be returnable to the justice issuing it "within any period of

12

time, not less than thirty, nor more than ninety days." Id. 207, § 32, 33.

The words "all processes" are sufficiently comprehensive to embrace not only *original* but *final process;* and such would be their interpretation, if they were not controlled or limited by the subject matter, or the connection in which they are found. In excepting process returnable to a superior court from the generality of the enactment, nothing could have been intended but attachments, or some other initiatory or ancillary process; and the *proviso*, that a suit instituted within five days preceding a justice's court, shall be returnable to the second term after its institution, though perhaps not conclusive of the intention of the legislature, is certainly persuasive to show that it did not propose to interfere with the issuing and return of executions. But if the terms employed be doubtful, a strong argument may be drawn from the inconvenience of the thing. If an execution is called for but a day previous to the sitting of the court, it must be returnable to the first term; and this although it is desired to be issued to a distant county, if the act of 1840 embraces executions. Such a regulation would often result in a loss to the plaintiff, and give to the defendant a license to remove his property where it could not be made available for the payment of his debts. This view brings us to the conclusion, that it is still allowable for justices of the peace to pursue the acts of 1814 and 1822 in framing executions, at least as it respects the time of their return.

We have seen that it was proved that May acted as a constable in Talladega from the date of the bond in question— lived in the same beat with Best, and in a few miles of Spence and Coker. The genuineness of the signatures of all the parties who appear to have executed the bond being proved, there was a sufficient foundation on which to rest the second charge. This point was so ruled when this cause was here at a previous term. 11 Ala. Rep. 466. The judgment of the circuit court is therefore affirmed.